IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


ELIZABETH A. BLACKBURN,

                Plaintiff,

v.                                            CIVIL ACTION NO.  2:11-cv-00401

CONSUMER PORTFOLIO SERVICES, INC.,

                Defendant.


**MEMORANDUM OPINION & ORDER**


Pending before the court is the defendant Consumer Portfolio Services, Inc.'s Motion for Partial Summary Judgment [Docket 49].  For the reasons discussed below, this Motion is **GRANTED in part** and **DENIED in part**.

**I.**      **Background**

      A.    *Facts*

The plaintiff, Ms. Blackburn, alleges that Consumer Portfolio Services, Inc. ("CPS") called her over 300 times from May 10, 2010, to January 2011 as part of an attempt to collect a debt.  (Am. Compl. [Docket 18], ¶ 4(a).)  Her Complaint claims that CPS's numerous calls were made "with the intent to annoy, harass, and oppress the Plaintiff," and she asserts that CPS called her three to four times a day while she was at work and at other inconvenient times.  (*Id*.)  The Complaint also alleges that CPS continued the calls after she informed it that she had retained an attorney and had requested that CPS contact her attorney.  (*Id*. ¶ 4(b).)  Specifically, she alleges

that CPS called her more than 180 times after she informed it that she had retained an attorney and that it called five additional times after she wrote CPS requesting that it contact her attorney. (*Id.*)

In addition to the above claims, Ms. Blackburn asserts that CPS disclosed her debt to her friends and family. (*Id.* ¶ 4(c).)  Finally, Ms. Blackburn claims that CPS added illegal fees and charges to her account when it refused to accept certain payment forms and when it allegedly demanded double payments. (*Id.* ¶ 4(d).)

B.     *Procedural History*

Ms. Blackburn initiated the instant case by filing her Complaint on May 16, 2011, in the Circuit Court of Kanawha County. (Compl. [Docket 1-1].)  The Complaint contains causes of action for (1) violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), (2) negligence, (3) intentional infliction of emotional distress, (4) invasion of privacy, and (5) nuisance. (*Id.*)  The case was removed to this court on June 6, 2011, based on diversity jurisdiction. (Notice of Removal [Docket 1].)

On October 26, 2011, Ms. Blackburn filed an amended complaint.  The defendant filed a Partial Motion to Dismiss Amended Complaint on November 9, 2011.  The Motion to Dismiss sought dismissal of the plaintiff's claims for (1) violations of the WVCCPA,[1] (2) negligence, (3) intentional infliction of emotional distress, and (4) nuisance.  The court granted the Motion as to the negligence and nuisance claims and denied the Motion as to the intentional infliction of emotional distress claim.

---

[1]     In its Reply to the Plaintiff's Response to its Partial Motion to Dismiss Amended Complaint, CPS withdrew its motion to dismiss for Ms. Blackburn's Claims under the WVCCPA.  (Def.'s Reply to Pl.'s Resp. to Partial Mot. to Dismiss Am. Compl. [Docket 27], at 1 n.1.)

On April 3, 2012, CPS filed a Motion for Partial Summary Judgment [Docket 49].  This Motion is ripe for review and a hearing was held concerning the Motion on May 17, 2012.

## II.     Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256.  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

III.   **Analysis**

A.   *Claim Pursuant to West Virginia Code § 46A-2-125(d)*

The plaintiff has brought a claim pursuant to West Virginia Code § 46A-2-125(d), which prohibits a debt collector from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number." *See* W. VA. CODE § 46A-2-125(d).   The defendant has moved for summary judgment on this claim because it alleges that the plaintiff has not presented evidence to establish that the defendant acted "with intent to annoy, abuse, oppress, or threaten" Ms. Blackburn.  (Mem. Supp. Def.'s Mot. for Partial Summ. J. [Docket 51], at 6.)   Thus, the defendant claims that Ms. Blackburn failed to establish an essential element of her claim—that the defendant acted with intent—and it is entitled to summary judgment.  (*Id.* at 6-7.)   The plaintiff responds by arguing that the large number of phone calls that Ms. Blackburn received is sufficient to establish that the defendant acted "with the intent to annoy, abuse, oppress or threaten Ms. Blackburn."  (Pl.'s Resp. Opp'n Def.'s Mot. for Partial Summ. J. [Docket 57], at 7.)

West Virginia Code § 46A-2-125 forbids debt collectors from "unreasonably oppress[ing] or abus[ing] any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another."  W. VA. CODE § 46A-2-125. The Code then outlines conduct that violates this prohibition.   It states that "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number."  *Id.* § 46A-2-125(d).   Courts have emphasized that

- 4 -

determining whether calls violate this section of the Act is a fact-specific determination that should be made on a case by case basis. *See, e.g.*, *Duncan v. JP Morgan Chase Bank, N.A.*, No. 5:10-cv-01049, 2011 WL 5359698, at *4 (S.D. W. Va. Nov. 4, 2011). Additionally, a large number of calls may be sufficient evidence of intent to create a genuine issue of material fact. *See id.* ("[P]laintiff has made the requisite showing to demonstrate a genuine issue of material fact with respect to the issue of the Defendant's intent, given the number of calls which were repeatedly placed to his telephones.").

In this case, the parties dispute the number of phone calls that Ms. Blackburn received in connection with her debt. The plaintiff claims that CPS made 351 phone calls to Ms. Blackburn, her workplace, and third parties regarding the debt. (Pl.'s Resp. Opp'n Def.'s Mot. for Partial Summ. J. [Docket 57], at 4.) The defendant argues that it only placed 94 phone calls. (Reply Supp. Def.'s Mot. for Partial Summ. J. [Docket 60], at 1.) Both parties point to the call logs to support their calculation of the volume of calls. However, neither party explains who the various phone numbers listed on the call logs belong to and neither party has offered a detailed explanation of the call logs such that the court could analyze them. These omissions have made it impossible for the court to discern whether the parties' assertions in their briefs are supported by evidence in the record.

A court must consider evidence in the light most favorable to the non-moving party when determining whether a genuine issue of material fact exists. However, a court may not consider assertions in briefs that are not supported by evidence in the record. *See Sammons v. Barker*, No. 2:07-cv-0132, 2008 WL 1968843, at *11 (S.D. W. Va. May 2, 2008). In this case, the court is unable to determine if the plaintiff's assertion that CPS made 351 phone calls regarding her debt

is supported by the call logs because the plaintiff did not explain how she calculated this number or provide a key for deciphering the call logs.

However, when the call logs are viewed in the light most favorable to the plaintiff, it is clear that Ms. Blackburn received a high volume of calls from CPS, and that large number is sufficient to create a genuine issue of material fact as to the defendant's intent "to annoy, abuse, oppress, or threaten" Ms. Blackburn.  The defendant acknowledges a high volume of calls in its briefs and in Defendant's Answers to Plaintiff's First Set of Interrogatories to Defendant [Docket 60-1], where it admitted there were ninety-four phone calls to the plaintiff based on its calculations.  When evaluating summary judgment motions, other courts in this district have found that there was a genuine issue of material fact as to the intent to annoy, abuse, oppress, or threaten in cases involving fewer than ninety-four phone calls.  *See, e.g.*, *Duncan v. JP Morgan Chase Bank, N.A.*, No. 5:10-cv-01049, 2011 WL 5359698, at *4 (S.D. W. Va. Nov. 4, 2011) (finding a genuine issue of material fact existed regarding the defendant's intent in a case involving 68 attempted calls); *Ferrell v. Santander Cons. USA, Inc.*, No. 2:11-cv-0260, at *3 (stating that a genuine issue of material fact existed on the issue of the defendant's intent because there were an estimated 72 phone calls to the debtor).  Viewing the volume of calls in the call logs in the light most favorable to the defendant, the court **FINDS** that this evidence creates a genuine issue of material fact regarding the defendant's intent.  Accordingly, the defendant's Motion for Partial Summary Judgment as to the alleged violations of § 46A-2-125(d) is **DENIED**.

> B.      *Claims Pursuant to West Virginia Code § 46A-2-127(g)*

West Virginia Code § 46A-2-127(g) prohibits debt collectors from making "[a]ny false representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." W. VA. CODE § 46A-2-127(g). The plaintiff claims that the defendant violated this section by refusing to accept personal checks and requiring her to make payments by Western Union or by phone. (Resp. Opp'n Def.'s Mot. Summ. J. [Docket 57], at 12.) Additionally, the plaintiff claims that the defendant induced her to make double payments by insisting she pay by phone and then also accepting online payments for the same amount due. (*Id*. at 14.) She alleges that the supposed double payments forced her to cancel the post-dated checks, which resulted in late fees and check fees. (*Id*.) Finally, the plaintiff asserts that the defendant violated this section by misrepresenting the amount of the debt by adding additional fees. (*Id*.)

The defendant asserts that the plaintiff did not introduce evidence that the defendant represented to Ms. Blackburn that she would incur additional illegal fees if she failed to make a payment. (Mem. Supp. Pl.'s Mot. Partial Summ. J. [Docket 51], at 7.) Specifically, the defendant claims that the plaintiff never asserted "that CPS misrepresented that Plaintiff's debt may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges that may not legally be added to her debt if she did not make a payment." (*Id*. at 8.)

Section 46A-2-127(g) bars debt collectors from representing to consumers that their debts "may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges" when the debt collector may not legally add such fees. W. VA. CODE § 46A-2-

127(g).  Any violation of the section requires a "representation" by the debt collector about the illegal fee.  *See id.*  Black's Law Dictionary defines representation as a "presentation of fact—either by words or by conduct—made to induce someone to act."  BLACK'S LAW DICTIONARY 1303 (7th ed. 1999).  Courts considering § 46A-2-127(g) have emphasized that the statute requires that the fee must be one that the debt collector cannot legally charge.  *See, e.g.*, *Tucker v. Navy Fed. Credit Union*, No. 3:10-cv-59, 2011 WL 6219852, at *7-8 (N.D. W. Va. Dec. 14, 2011); *In re Machnic*, 271 B.R. 789, 793 (Bkrtcy. S.D. W. Va. 2002).

In this case, the plaintiff's contract specifically addresses "late charges," stating "[i]f all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due, not to exceed $15."  (Retail Installment Contract & Security Agreement [Docket 49-2], at 1.)  The contract does not prohibit other fees.  Thus, under the contract, CPS could not make representations to Ms. Blackburn that it would charge her more than $15 in late charges.  *See* W. VA. CODE § 46A-2-127(g).

This court must determine whether the Western Union fees, charges for phone payments, check fees, and alleged double payments are "late charges" by CPS, and thus prohibited by Ms. Blackburn's contract if they exceed $15.  The Western Union fees are not charged by CPS.  Instead, they are charges associated with the payment form.  Thus, they are not late charges.  Likewise, charges incurred because Ms. Blackburn paid her bill by phone are not late fees, but charges incurred by using a particular payment form.  The check fees are also not late charges, but were assessed because she cancelled a check.  Finally, CPS allegedly accepting "double payments" by taking a phone payment and online check payment is not a late charge prohibited by the contract.  Specifically, the plaintiff has failed to present evidence that these "double

payments" were late charges and not two payments on the principal.   Thus, the "double payments," Western Union fees, check fees and phone payment charges are not late charges prohibited by Ms. Blackburn's contract, and thus are not illegal fees.  *See* W. VA. CODE § 46A-2-128(d) (prohibiting the "collection of or attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute"). Accordingly, the court **FINDS** that any representation made by CPS in association with such charges was not a representation of an illegal fee and did not violate § 46A-2-127(g).

The plaintiff also claims that a $50.00 collection fee assessed on January 1, 2011, was an illegal fee.  When viewed in the light most favorable to the plaintiff, the collection fee could be considered a late fee because it arose out of her late payments.  The record contains evidence that the plaintiff paid the collection fee.   The fact that the plaintiff paid the collection fee is circumstantial evidence that CPS made representations to her regarding the collection fee.  Thus, the court **FINDS** that the plaintiff has created a genuine issue of material fact as to whether the defendant represented that it would charge Ms. Blackburn illegal fees.

In sum, the plaintiff has failed to provide evidence that the defendant represented to Ms. Blackburn that it would charge her illegal fees as to the Western Union fee, charges for phone payments, check fees, and alleged double payments.   Accordingly, the plaintiff has failed to create a genuine issue of material fact as to those claims and the defendant is entitled to judgment as a matter of law.  The plaintiff has created a genuine issue of material fact as to the collection fee.  Accordingly, the court **GRANTS in part** and **DENIES in part** the defendant's Partial Motion for Summary Judgment as to the § 46A-2-127(g) violations.

C.    *Claims that the Defendant Violated West Virginia Code § 46A-2-128(e)*

West Virginia Code § 46A-2-128(e) prohibits a debt collector from communicating with a consumer if it appears that the consumer is represented by an attorney and the name and address of the attorney are known.  W. VA. CODE § 46A-2-128(e).  The plaintiff claims that the defendant violated this provision by calling her repeatedly after she informed it that she was represented by an attorney.  (Am. Compl. [Docket 18], at 3.)  Specifically, she claims that she informed CPS that she was represented by Wesley White on December 15, 2010, but the defendant made numerous phone calls to her concerning the debt after that time.  (*Id.*)

The defendant has moved for summary judgment on the § 46A-2-128(e) claim, alleging that the exception to § 46A-2-128(e)'s general prohibition applies in this case because the plaintiff's attorney refused to "discuss the obligation."  (Mem. Supp. Def.'s Mot. for Partial Summ. J. [Docket 51], at 10-11.)  It claims that it tried contacting the plaintiff's attorney three times, but he did not return its phone calls on two occasions.  (*Id.* at 11.)  The one time that the defendant reached the plaintiff's attorney, the defendant claims that the attorney "did not discuss the obligation beyond his agreement to follow up with his client about her intentions with respect to the obligation."  (*Id.*)  CPS has submitted affidavits that it claims provide evidence of its version of the interactions with the plaintiff's attorney.[2]  (*Id.*)  The plaintiff addresses these claims in her brief, asserting that the defendant actually made five phone calls to the plaintiff's attorney after December 15, 2010.  (Pl.'s Resp. Opp'n Def.'s Mot. for Partial Summ. J. [Docket 57], at 16.)  The plaintiff also alleges in her brief that the plaintiff's attorney discussed the obligation with CPS and requested that CPS follow up with him.

West Virginia Code § 46A-2-128(e) was enacted to prevent debt collectors from using "unfair or unconscionable means to collect" a debt.  W. Va. Code § 46A-2-128.  One means prohibited by the WVCCPA is communicating with a consumer "whenever it appears" that an attorney represents the consumer and "the attorney's name and address are known."  *Id*.  The section allows a debt collector to communicate with a consumer who is represented by an attorney if the "attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication."  *Id*.

In this count, the issue is whether the plaintiff's attorney "failed to answer correspondence, return phone calls or discuss the obligation in question."  Failure to respond or discuss would allow CPS's communications with the debtor after December 15, 2010, to fall within § 46A-2-128(e)'s  exception.  The call logs show that the defendant called the plaintiff's attorney on five different occasions.  The call logs also reveal that during one of the phone calls, a CPS representative spoke to the plaintiff regarding the debt.  When these facts are viewed in the light most favorable to the plaintiff, the court **FINDS** that there is a genuine issue of material fact as to whether the plaintiff's attorney answered correspondence, returned phone calls, or discussed the obligation in question with CPS.  Accordingly, the court **DENIES** the defendant's Motion for Partial Summary Judgment as to the § 46A-2-128(e) claims.

D.      *Claim for Intentional Infliction of Emotional Distress*

Finally, the plaintiff has brought a claim for intentional infliction of emotional distress (IIED) against the defendant.  Specifically, the plaintiff claims that the defendant committed the tort of IIED by repeatedly and rudely contacting the plaintiff regarding her debt and by calling

---

[2]       The plaintiff also objected to affidavits presented by the defendants on grounds that they violate the Federal Rules of Evidence.  The court will not address these objections at this time because the determination is unnecessary

the plaintiff at home and at work multiple times per day.  (Am. Compl. [Docket 18], at 7-8.)  The plaintiff also claims that the defendant committed IIED by continually calling after she informed it that she had retained an attorney and because it contacted third parties regarding her debt.  (*Id*.)

The defendant has moved for summary judgment claiming that the plaintiff has not presented evidence on several elements of IIED.  First, the defendant claims that the plaintiff has not presented evidence of conduct that is "extreme or outrageous" as required by West Virginia law.  (Mem. Supp. Def.'s Mot. for Partial Summ. [Docket 51], at 12.)  Second, the defendant asserts that the plaintiff has failed to produce evidence establishing that the plaintiff "suffered sufficient emotional harm as a result of CPS's actions."  (*Id*.)

The West Virginia Supreme Court of Appeals ("WVSCA") discussed the tort of IIED in *Travis v. Alcon Laboratories, Inc.*, stating:

> The four elements of the tort can be summarized as: (1) conduct by the defendant which is atrocious, utterly intolerable in a civilized community, and so extreme and outrageous as to exceed all possible bounds of decency; (2) the defendant acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain such distress would result from his conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

202 W. Va. 369, 375 (1998).  The WVSCA has emphasized that the conduct at issue must be so extreme and outrageous "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id*.  (quoting *Tanner v. Rite Aid of W. Va.*, 194 W. Va. 643, 651 (1995)).  Furthermore, the court has explained that "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Id.*  (quoting *Tanner v. Rite Aid of W. Va.*, 194 W. Va. 643, 651 (1995)).  In

---

to decide the issue of summary judgment.

- 12 -

consumer protection cases, one factor in determining whether the defendant's conduct is atrocious and outrageous is whether the defendant called at inappropriate hours or used abusive and threatening language. *See Ferrell v. Santander Cons. USA, Inc.*, -- F. Supp. 2d ---, 2012 WL 929820, at *5 (S.D. W. Va. 2012). The volume of calls is insufficient to make the conduct extreme and outrageous. *Id.* ("The mere fact that defendant attempted to collect plaintiffs' debt by the telephone calls outlined above over a couple of months is, without more, quite insufficient to support an intentional infliction of emotion distress claim.").

In this case, the court must first determine if the defendant's actions rise to the level of extreme and outrageous conduct required to establish an IIED claim. The plaintiff testified in her deposition that the defendant's representatives "weren't very nice." (Blackburn Dep. [Docket 49-3], at 30:14-18.) The primary evidence of extreme and outrageous conduct that the plaintiff points to is the large volume of calls that Ms. Blackburn and others received regarding her debt. While the defendant's repeated phone calls to Ms. Blackburn were undoubtedly annoying, its conduct is not "extreme misconduct" required to establish IIED. *See Tanner*, 194 W. Va. at 650 ("[W]e have demanded such strict proof of unprecedented and extreme misconduct."). Thus, the court **FINDS** that the plaintiff has failed to present evidence that creates a genuine issue of material fact as to the extreme and outrageous conduct element of IIED. Accordingly, the court **GRANTS** the defendant's Motion for Partial Summary Judgment as to the IIED claim.

## IV.    Conclusion

For the reasons discussed above, the court **GRANTS in part** the defendant's Motion for Summary Judgment as to the plaintiff's § 46A-2-127(g) claim and IIED claim. The court also

**DENIES in part** the defendant's Motion for Summary Judgment as to the plaintiff's claims pursuant to § 46A-2-125(d), § 46A-2-127(g), and § 46A-2-128(e).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 8, 2012

Joseph R. Goodwin, Chief Judge